IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ADOLPH PERALES and
RACHEL PERALES,

        Plaintiffs,

vs.                                                               No. CIV 98-245 MV/DJS

ST. VINCENT HOSPITAL,
a domestic non-profit corporation,

        Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Motion and Memorandum in Support by Plaintiffs Seeking a New Trial, filed April 23, 1999 **[Doc. No. 96]**, and St. Vincent Hospital's Motion to Tax Costs and Memorandum in Support, filed April 29, 1999 **[Doc. No. 98]**. The Court, having considered the pleadings, relevant law, and being otherwise fully informed, finds that the motion for a new trial is well taken and will be **granted**, and that consequently the motion for costs will be **dismissed as moot**.

### **Background**

In this personal injury action, Plaintiffs have alleged that Mr. Adolph Perales, while being treated for a stroke at St. Vincent, was allowed to fall by an orderly assisting him. Mr. and Mrs. Perales claim that St. Vincent was negligent because its employees failed to follow written policies, failed to follow the orders of Mr. Perales' physician confining Mr. Perales to bed rest, and allowed Mr. Perales to fall while he was in their care. Jury selection occurred on April 6, 1999, with trial following from April 12 to the 16th. The jury returned a defense verdict, finding that Defendant had not been negligent. Displeased with the Court's jury instructions, Plaintiffs now seek a new trial.

Specifically, Plaintiffs argue that a last minute change from the parties' agreed charging instruction substantially altered the way in which the Plaintiffs' theory of the case was presented to the jury, resulting in prejudicial jury confusion and error.

Prior to trial, the parties submitted proposed jury instructions. While differing somewhat in their language, both Plaintiffs' and Defendant's charging instructions listed three contentions with respect to alleged negligence: 1) that Defendant failed to follow its written policies regarding patients who are at risk of falling, e.g., after having suffered a stroke, 2) that Defendant failed to follow physicians' orders that Mr. Perales be confined to bed rest in order to avoid falling, and 3) that Defendant allowed Mr. Perales to fall while he was in Defendant's care. The parties also agreed on Plaintiffs' burden to prove that any negligence was the proximate cause of injuries and damages.

Based on the substantial similarity of the parties' charging instruction, the Court proposed to instruct the jury as follows, giving counsel, near the end of the trial, an opportunity to object:

> To establish the claim of negligence on the part of the defendant, that is, to establish that Defendant breached its duty of ordinary care, the plaintiffs have the burden of proving at least one of the following contentions:
> 1) The defendant failed to follow its written policies regarding patients who are at risk of falling.
> 2) The defendant failed to follow the orders of Mr. Perales' treating physician that he be confined to bed rest.
> 3) The defendant allowed Mr. Perales to fall while he was in defendant's care.

During oral argument on the Court's proposed jury instructions, Defendant for the first time raised an objection to this instruction. Defendant claimed the first contention, on the failure to follow written policies, allowed the jury to conclude that any violations of policy was negligence per se. Essentially, Defendant disagreed with the structure of an instruction that would elevate a self-imposed policy to the status of law or regulation. Defendant, however, did not provide case law to support its position.

Despite this lack of support, the Court saw merit in Defendant's argument and restructured its instruction to reflect that a violation of written policies was one, but not the only, item the jury could consider in its deliberations on negligence. Similarly, the Court subordinated Plaintiffs' allegations of failure to follow a treating physician's order to the central issue in this case, whether Defendant allowed Mr. Perales to fall while in its hospital. Over Plaintiffs' objections the Court instructed the jury as follows:

> To establish the claim of negligence on the part of the defendant, that is, to establish that Defendant breached its duty of ordinary care, the plaintiffs have the burden of proving that the defendant allowed Mr. Perales to fall while he was in [the] defendant's care.
> In considering whether the plaintiffs have met their burden, you may look to
> 1) whether the defendant failed to follow its written policies regarding patients who are at risk of falling, and whether such failure was unreasonable under the circumstances, or
> 2) Whether the defendant failed to follow the orders of Mr. Perales' treating physician that he be confined to bed rest, and whether such failure was unreasonable under the circumstances.

The case went to the jury at 7:00 pm on April 15th. The jury elected to reconvene the next morning. During deliberations on the 16th, the jury sent a note to the Court at 11:15 a.m. stating:

> Would you please define the word negligent?
>
> Is it negligent (bodily injury) to the fall or negligent as to not knowing policies.
>
> Referring to question #1: Does negligent imply that it was proceeded [sic] by bodily injury?

The parties were unable to reach a compromise on the wording of a response to this query. At 2:03 p.m. the Court referred the jury to instructions it had already received, writing: "In response to your question of 11:15 am the Court refers you to Instructions 21, 23, and 24 [the Court's charging instruction and its instructions on proximate cause and a hospital's duty of care]. Remember,

3

however, that all of the instructions must be considered by you as a whole." Less than an hour later the jury returned its verdict in favor of Defendant.

Plaintiffs argue two main points in seeking a new trial. First, Plaintiffs claim that the last minute change in the instructions substantially altered the way in which the Court instructed the jury on Plaintiffs' theory of the case, which Plaintiffs had presented through opening statements, during the course of trial, and in their closing arguments. Second, Plaintiffs claim that the Court's instruction erroneously introduced causation as an element of negligence, resulting in jury confusion. Plaintiffs point to a note sent by the jury during its deliberations as evidence of that confusion. Throughout their argument, Plaintiffs steadfastly maintain that they are entitled to jury instructions on their theory of the case.

Defendant counters, as it did at trial, that instructing the jury on the failure to follow written policies as one sole basis for negligence would have impermissibly brought negligence per se into this case. Defendant further maintains that the Court's instruction correctly reflected the law of New Mexico and the evidence presented at trial. Defendant is silent on the issue of jury confusion.

**Discussion**

The decision whether to grant a motion for a new trial is committed to the broad discretion of the trial court. *Royal College Shop, Inc. v. Northern Ins. Co. of N.Y.*, 895 F.2d 670, 677 (10th Cir. 1990). Courts facing a motion for a new trial predicated on claimed errors in jury instructions must view those instructions as a whole, *Furr v. AT & T Technologies, Inc.*, 824 F.2d 1537, 1549 (10th Cir.1987), and generally must "consider all the jury heard, and from the standpoint of the jury, decide not whether the charge was faultless in every particular, but whether the jury was misled in any way and whether it had understanding of the issues and its duties to determine these issues." *Patty Precision Products Co. v. Brown & Sharpe Mfg. Co.*, 846 F2d 1247, 1252 (10th Cir. 1988)

4

(citations and quotations omitted). In this case Plaintiffs have alleged error only in the Court's changing a stipulated charging instruction upon Defendant's last minute objection. Plaintiffs also maintain that the jury showed sufficient confusion to warrant a new trial.

I. The jury instruction on negligence.

A plaintiff's right to an instruction that reflects a theory of the case is not unlimited. Courts, of course, have an obligation to heed a theory of the case when instructing a jury. *See Abeita v. Northern Rio Arriba Electric Coop.*, 946 P.2d 1108, 1118 (N.M. Ct. App. 1997). Despite this obligation, however, courts may not incorrectly instruct a jury on the law. *See United States v. Jaynes*, 75 F.3d 1493, 1504 (10th Cir. 1996). Although Plaintiffs argue that they are absolutely entitled to an instruction on their theory of the case, then, the Court need not have given the proposed instruction if it conflicted with applicable law.

In support of their contention that New Mexico law recognizes a breach of a hospital's own policies as being sufficient for a finding of negligence, Plaintiffs cite *Hines v. St. Joseph's Hospital*, 527 P.2d 1075 (N.M. Ct. App. 1974). *Hines* involved litigation, premised in strict liability and negligence, over the transmission of hepatitis through blood transfusions. *Id.* at 1076. In addressing the negligence claim, the majority noted that the blood supplier, by complying with all federal regulations, accreditation standards, and its own internal regulations, had "acted with due care under the circumstances." *Id.* at 1078. To say that full compliance with all standards can not lead to negligence is not to say, however, that the failure to comply with one of those standards results in negligence. *Hines*, therefore, is inapposite.

Contrasting with Plaintiffs' single unpersuasive authority from New Mexico law, Defendant has corrected its neglect in not presenting case law to the Court at oral argument. Defendant in its response brief cites numerous cases from other jurisdictions for the proposition that the failure of a

5

hospital to follow its internal policies, while possibly being evidence of negligence, does not without more conclusively establish that negligence. For example, in *Darling v. Charleston Community Memorial Hospital*, 211 N.E. 2d 253 (Ill. 1965), a case frequently cited on this issue, the court held that a hospital's regulations were by themselves insufficient to establish a standard of care, and were at best analogous to custom:

> In the present case the regulations, standards, and bylaws which the plaintiff introduced into evidence, performed much the same function as did evidence of custom. This evidence aided the jury in deciding what was feasible and what the defendants knew or should have known. It did not conclusively determine the standard of care.

*Id.* at 257.

A contemporaneous opinion from another jurisdiction followed this holding. *Foley v. Bishop Clarkson Memorial Hospital*, 173 N.W.2d 881 (Neb. 1970) discussed a hospital's responsibilities in a case involving the death of a woman some 31 hours after delivering a child, and the hospital staff's failing to take a medical history or alert a physician when vital signs began to deteriorate. *Id.* at 882-83. In reviewing allegations that staff should have noticed the severity of Mrs. Foley's condition, the court applied a standard of care comparable to the one now prevalent in New Mexico.[1] The court held in part that proof of violation of hospital regulations is not "conclusive on the question of negligence, but is simply evidence of negligence." *Id.* at 884, *citing Darling*, 211 N.E.2d 253.

Likewise, more recent case law reflects the same approach. In 1990 the Supreme Court of Connecticut noted that "[a]lthough a violation of an employer's work rules can be viewed as evidence

---

[1] In *Foley* the "proper measure of the duty of a hospital to a patient [was] the exercise of that degree of care, skill, and diligence used by hospitals generally in the community where the hospital is located or in similar communities." *Foley*, 173 N.W.2d at 884. In New Mexico the current duty of a hospital is "to use ordinary care in furnishing services for the patient. Ordinary care requires that the hospital possess and apply the knowledge, and use the skill and care, that is ordinarily used by reasonably well-operated hospitals, giving due consideration to all the circumstances and to the locality involved." UJI 13-1119 NMRA 1991.

6

of negligence, such a violation does not establish the applicable duty of the hospital to its patients, since hospital rules, regulations and policies do not themselves establish the standard of care." *Petriello v. Kalman*, 576 A.2d 474, 479 (Conn. 1990). Texas law is similar. *Denton Regional Medical Center v. LaCroix*, 947 S.W.2d 941 (Tex. App.–Ft. Worth 1997), held that in determining a standard of care, courts could "look to the hospital's internal policies and bylaws, as well as the standards of the Joint Commission on Accreditation of Health Care Organizations (JCAHO). However, these factors *alone* do not determine the governing standard of care." *Id.* at 951 (emphasis added). There is broad consensus among various jurisdictions, then, that while a hospital's policies are important in evaluating a standard of care, they can not stand alone, so that violations of those policies would, without more, lead to a finding of negligence.

The instruction Plaintiffs proposed, and which Defendant approved until the last minute, were contrary to those principles. Without qualifying that violations of written policies were but one factor to consider in determining a breach of the duty of ordinary care, the instruction would have allowed the jury to find breach based on those violations alone. As proposed, the instruction was an incorrect statement of the law.

II. The jury's confusion.

The Court cannot state, as Plaintiffs suggest, that the change in jury instructions was the cause of jury confusion. Plaintiffs' theory of the case centered around three distinct propositions: the failure to follow hospital policies, the failure to follow physician's orders, and allowing Mr. Perales to fall. Although not presented to the jury in a structure Plaintiffs preferred, those three areas were fully covered in the Court's charging instruction. Plaintiffs also complain that the Court's instruction intertwined negligence and causation, by telling the jury it could find negligence if it found that Defendant allowed Mr. Perales to fall. Plaintiff's own proposed instruction, however, itself would

7

have instructed the jury that it could find negligence if it determined that an orderly allowed Mr. Perales to fall. To conclude that the jury's confusion was the result of the Court's changes, therefore, would require a speculative leap the Court is not prepared to make. Nevertheless, it is undeniable that the jury was confused on crucial issues. The jury showed its confusion in the note it sent the Court on April 16. That note stated:

> Would you please define the word negligent?
>
> Is it negligent (bodily injury) to the fall or negligent as to not knowing policies.
>
> Referring to question #1: Does negligent imply that it was proceeded [sic] by bodily injury?

The jury clearly was confused regarding negligence and proximate cause, two important elements of the Plaintiffs' cause of action. Indeed, Defendant itself rested a mistrial motion, made after seeing the jury's note, on the very argument that the jury was confused as to negligence and proximate cause. In response to the note the Court directed the jury, at the suggestion of counsel, to instructions it had already given.

Upon being made aware of jury confusion a court must endeavor to correct the possibility of error and "must clarify that confusion." *United States v. Duran*, 133 F.3d 1324, 1334 (10th Cir. 1998). Failure to do so constitutes plain error. *Id.* In addition, a court should not merely direct the jury's attention to its previous instructions, for "it is not sufficient for the court to rely on more general statements in its prior charge." *Id., quoting United States v. Nuñez*, 889 F.2d 1564, 1568 (6th Cir. 1989). Rather, a court must strive to clear jury difficulties away with "concrete accuracy." *Duran*, 133 F.3d at 1334. In this instance, the Court's referring the jury back to its previously given instructions was insufficient to correct the significant confusion over important legal standards that became apparent when the jury queried the Court shortly before concluding its deliberations. A new

8

trial is appropriate to correct this error. *See Duran*, 133 F.3d at 1334-35.

**THEREFORE**,

**IT IS HEREBY ORDERED** that Motion and Memorandum in Support by Plaintiffs Seeking a New Trial, filed April 23, 1999 **[Doc. No. 96]** be, and hereby is, **granted**.

**IT IS FURTHER ORDERED** that St. Vincent Hospital's Motion to Tax Costs and Memorandum in Support, filed April 29, 1999 **[Doc. No. 98]** be, and hereby is, **dismissed as moot**.

**IT IS FURTHER ORDERED** that jury selection is hereby set for **Monday, July 19, 1999, at 9:30 a.m., Albuquerque, New Mexico**, with trial to be held in Santa Fe, New Mexico.

                                                  MARTHA VÁZQUEZ
                                                  UNITED STATES DISTRICT JUDGE

| Counsel for Plaintiffs | Counsel for Defendants |
|---|---|
| James Lyle | William Slattery |
| | David Lawrenz |